IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMARA B. FIELDS, individually and as
Personal representative for the estate of
Darton A. Fields II,                                      )
                                      Plaintiff,          )
v.                                                        )          Case. No. 21-cv-02239-JWB
                                                          )
KANSAS DEPARTMENT OF CORRECTIONS                          )
 et al.,                                                  )
                                      Defendants.         )
_____)

## DEFENDANTS' MOTION TO DISMISS

**COME NOW,** Defendants Kansas Department of Corrections (KDOC) and Parole Officer

Jacob Snyder, by and through Assistant Attorney General, Bryan Ross, of the Office of Attorney

General Derek Schmidt, and hereby submit the following motion to dismiss for failing to state a

claim upon which relief may be granted.

### Nature of the Case

On May 25 2019, Kristopher Klesath shot Darton A. Fields II in Topeka Kansas, resulting

in his eventual death. Mr. Klesath was on parole and allegedly under the supervision of Parole

Officer Jacob Snyder. (Doc. 7 at 2). At the time of the shooting, Plaintiff Tamara Fields alleges

that Mr. Klesath was a multiple time violator of his parole agreement. (*Id.* 2-3).  As a result of the

alleged violations of parole agreement, Parole Officer Snyder and KDOC are alleged to have

violated an undefined duty. The claims against Officer Snyder are in both his personal and official

capacity. (Doc. 1 at 3). Based upon the pleadings, it appears that Plaintiff is attempting to state a

cause of action under 42 U.S.C. 1983 and 1988, 18 U.S.C. 242, K.S.A. 60-1801, K.S.A. 60-1902,

as well as violations of the Fourteenth and Sixth Amendments. (Doc. 7 at 1, 4). Plaintiff is claiming

1

that Defendants "failed to Supervise, Monitor, and Enforce the Terms and conditions of Mr. Klesath's Parole" (Id.).

Defendants are mindful that Plaintiff is proceeding *pro-se* and that the court will construe her pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff brings causes of action under both state and federal laws. Plaintiff states many times that Mr. Klesath was allegedly in violation of his parole and her opinion that Mr. Klesath's parole should have been revoked.  Plaintiff's allegations that Mr. Klesath was in violation of his parole are all arguably conclusory in nature.  However, regardless of whether Mr. Klesath's parole should have been revoked or not, Defendants are entitled to immunity from suit because of Eleventh Amendment Immunity and qualified immunity, and the action should be dismissed with prejudiced based upon those immunities and other bases as set forth below:

## Standard for a 12(b)(6) Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting its analysis, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citation omitted). Although "detailed factual allegations" are not required, a plaintiff must provide "more than labels and conclusions," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone

is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017).

The Supreme Court demands that a plaintiff identify how each defendant, through his or her "own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The complaint should "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations …" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

## Arguments and Authorities

### I.     KDOC Lacks Capacity to Sue or Be Sued

Here, Plaintiff has alleged a cause of action against Kansas Department of Corrections (hereinafter "KDOC"). Plaintiff's cause of action is improper because KDOC lacks capacity to sue or be sued. "A party's capacity to sue or be sued in federal court is determined by state law. Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued. The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued. Accordingly, the Court holds that KDOC lacks the capacity to be sued and KDOC's Motion to Dismiss is granted." *Sims v. Kansas Dep't of Corr.*, No. 18-01259-EFM-KGG, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (Internal punctuation and citations omitted).  Because KDOC lacks the capacity to sue or be sued, all of Plaintiff's causes of action against KDOC should be dismissed.

### II.     KDOC is entitled to Eleventh Amendment Immunity

In addition to the lack of capacity to be sued, Eleventh Amendment Immunity bars damages actions against a state in federal court, even by its own citizens, unless the state waives that

immunity. See U.S. Const. amend. XI. The Eleventh Amendment bars claims for damages against entities that are arms or instrumentalities of a state. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir.2000). KDOC is an arm or instrumentality of the State of Kansas "In the first place, we have no trouble concluding that KDOC is an agency or department of the State of Kansas." *Vinson v. McKune*, 265 Kan. 422, 960 P.2d 222, 226 (1998) ("[T]he Department of Corrections is a state agency...."); *Garner v. Nelson*, 25 Kan.App.2d 394, 963 P.2d 1242, 1245 (1998) ("The Kansas Department of Corrections is a state agency."); *Love v. Hayden*, 757 F.Supp. 1209, 1212 (D.Kan.1991) ("[T]he Kansas Department of Corrections ... is clearly a state entity.") *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012). (Internal Quotes omitted).

In its capacity as a State Agency, KDOC is entitled to Eleventh Amendment Immunity for any action not abrogated by statute. See *Giese v. Scafe*, 133 F. App'x 567,569 (10th Cir. 2005) (State parole board is an instrumentality of the state, entitled to Eleventh Amendment Immunity.), KDOC has not abrogated its immunity, by statute or otherwise. See *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) ("But the KTCA is not a waiver of Eleventh Amendment Immunity. We know this because the statute tells us so"). KDOC has not abrogated its immunity from suit by statute or otherwise, and as a result is entitled to Eleventh Amendment Immunity. Because Plaintiff has not alleged sufficient facts that KDOC abrogated its Eleventh Amendment Immunity, this action against KDOC must be dismissed.

### III.    *Ex Parte Young* Exception Does Not Apply

The well-known exception to Eleventh Amendment Immunity is *Ex Parte Young*. "In determining whether the Ex parte Young doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland,*

*Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636, 122 S. Ct. 1753, 1755, 152 L. Ed. 2d 871 (2002). Here, Plaintiff has not made any allegations of an ongoing violation of federal law as a basis for prospective relief, thus *Ex Parte Young* exception is inapplicable.

Further, KDOC is a legislatively created body authorized by the State of Kansas to rehabilitate and confine persons convicted of felonies. "It is the intent of the legislature that judges, the secretary of corrections, his or her agents, subordinates and employees and the Kansas adult authority, its agents, subordinates and employees will construe and apply this act and acts of which it is amendatory or supplemental liberally to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community upon leaving the custody of these state agencies and officers." KSA 75-5201.

Plaintiff's long-winded request for what could may be considered injunctive relief is not something that KDOC has statutory authority to grant or deny; in other words, KDOC is a creature of statute and its authority and powers are dictated by the same. Plaintiff requests, among a litany of other things, 3 state business contracts of their choice, allocated on an indefinite basis at a minimum of $3 Million each, rename a street in the City of Topeka, make a private property into a state park that will double as a homeless shelter, over which the city will not be able to exercise any control. This requested relief, no matter its form, is not anything that KDOC has authority to grant within its statutory duties to rehabilitate convicted felons. Because KDOC cannot grant or deny any of Plaintiff's requested "injunctive" relief, and because *Ex Parte Young* exception does not apply, this court must dismiss Plaintiff's cause of actions against KDOC.

## IV.    Parole Officer Snyder is Entitled to Eleventh Amendment Immunity

Plaintiff also brings a claim against Officer Snyder in his official capacity. As an employee of the State of Kansas, Officer Snyder is entitled to Eleventh Amendment Immunity as an arm or

instrumentality of the state. See *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir.1996) (employees of entity that is found to be an arm of the state, who are sued in their official capacities, also entitled to Eleventh Amendment sovereign immunity). *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009) (Affirming the District Court's denial of a 1983 action against state employees in their official capacities because of Eleventh Amendment immunity). KDOC is an arm of the state, and Officer Snyder is an employee of that arm.  Accordingly, as discussed above, Officer Snyder in his official capacity is entitled to Eleventh Amendment Immunity upon the same grounds as KDOC.  Therefore, any claims against Officer Snyder in his official capacity must be dismissed because of Eleventh Amendment Immunity.

## V.    Parole Officer Snyder is entitled to Qualified Immunity

"Qualified immunity protects government officials from liability for civil damages if their conduct 'does not violate clearly established statutory or constitutional rights' about which a reasonable person would have known."  *McIntyre v. Unified Government of Wyandotte County and Kansas City, Kansas*, 2020 WL 1028303, at 11 (D.Kan., 2020).  Where a defendant asserts a qualified-immunity defense, the burden shifts to the plaintiff to submit sufficient evidence showing (1) the violation of a constitutional right that (2) was clearly established at the time of the violation. See e.g., *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011); *Lumry v. State*, 2018 WL 4839654 *7 (Kan. Ct. App. 2018).  "A constitutional right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *McIntyre v. Unified Government of Wyandotte County and Kansas City*, *Kansas*, 2020 WL 1028303, at 12 (D.Kan., 2020).

Courts may decide which of these prongs to address first, and a plaintiff's failure to address either is fatal to a plaintiff's claim. See *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 n.2 (10th Cir. 2009).  To meet the "heavy, two-part burden" necessary to overcome a qualified-immunity defense, a plaintiff must allege facts sufficient to show a constitutional violation, and those facts must find support from admissible evidence in the record. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) (internal quotation marks omitted).

The US Supreme Court has enshrined "government officials performing discretionary functions with qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987). "Decisions involving the revocation of probation or parole by a probation or parole officer warrant only qualified, not absolute, immunity." *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) Quoting *Snell v. Tunnell*, 920 F.2d 673, 692 n. 18 (10th Cir.1990). Plaintiff has not identified any laws that Officer Snyder broke in performing his job as a parole officer that would abrogate his qualified immunity. Plaintiff alleges in her petition that Officer Snyder "failed to revoke Mr. Klesath's [parole] for any of Mr. Klesath's many violations" (Doc. 7 at 4). To the extent that Officer Snyder even had such authority, any decision to revoke or not revoke Mr. Klesath's parole was done at Officer Snyder's discretion, and any such decision is entitled to qualified immunity. Because of this, Defendant Snyder asserts qualified immunity and the burden shifts to Plaintiff to prove what specific conduct of Officer Snyder violated a clearly established constitutional right.

## VI.    Parole Officer Snyder did not owe a duty to the deceased

Plaintiff alleges that the deceased suffered a wrongful death and loss of life because Officer Snyder and KDOC's gross negligence for failing to properly carry out the terms of Mr. Klesath's

parole. (Doc. 9 at 5) The Kansas Supreme Court has repeatedly held that "negligence only exists where there is a duty owed by one person to another and a breach of that duty occurs." *Schmidt v. HTG, Inc.*, 265 Kan. 372, 382, 961 P.2d 677, 684 (1998). "To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *S. ex rel. S. v. McCarter*, 280 Kan. 85, 85, 119 P.3d 1, 3 (2005). Here, Plaintiff alleges that Officer Snyder owed a duty to control Mr. Klesath's actions. Generally, in the absence of a "special relationship," there is no duty to control the conduct of a third party to prevent harm to others. *Schmidt* at 685. There is an exception to the special relationship rule dealing with dangerous persons in custodial settings, however this is inapplicable to parole officers. Kansas courts have found that a parole officer does not control a parolee in a custodial setting. *Id.* at 286.

Schmidt v. HTG, Inc., 265 Kan. 372 961 P.2d 677 (1998) is on point for this matter. In *Schmidt*, the case revolved around whether the State and its parole officer were liable for failing to warn an employer about an employee who had been released on Parole. The court begins by examining whether a "special relationship" existed between the parole officer and parolee. The court found that there was no such special relationship, as Kansas only requires control of a third person involving dangerous persons in custodial settings. "A parole officer does not take charge or exercise control over a parolee so as to create a special relationship between the officer and the parolee, thereby imposing a duty upon the State to control the conduct of the parolee to prevent harm to other persons or property. The State is not the virtual guarantor of the safety of each and every one of its citizens from illegal and unlawful actions of every parolee or person released from custody under any type or kind of supervision." *Schmidt v. HTG, Inc.*, 265 Kan. 372, 373, 961 P.2d 677, 679 (1998)

The court further reasoned, that even if a special relationship did exist, that there was no duty placed on Officer Schirk. "There was no duty imposed by law upon [parole officer] to notify the employers of his parolees of their criminal history, *even had we found a special relationship existed"* Id. at 691 (emphasis added). The court found that a parole officer was "required to balance society's interest in rehabilitating Gideon by ensuring he remained employed with the potential danger to third persons that he would reoffend. He had to weigh various risk factors, including Gideon's past and present conduct, in determining the danger posed to others. Schirk had no knowledge of any particularized threat to any of Gideon's co-workers, and as time passed, Schirk may have been less likely to believe there was a danger to such persons." *Id*. Thus, the Kansas Supreme Court found that no special relationship existed between parole officer and parolee which would necessitate a duty to control parolee's conduct to prevent harm to others. The court found it important to note that the case "does not involve a situation where any specific threat of harm had been directed against any certain individual or ascertainable group." *Id*. at 688-89.

Applying these holdings to the current case, Plaintiff has alleged no facts to establish that any special relationship existed as between Officer Snyder and Mr. Klesath. Because of this, Plaintiff is unable to prove that a duty existed for Officer Snyder to control Mr. Klesath's actions. The burden is on the plaintiff pleading negligence to allege facts to demonstrate the existence of a duty owed by the defendant. Further, there is nothing alleged to suggest Mr. Klesath had threatened the deceased in any way so that Officer Snyder would know that Mr. Klesath was presenting a specific threat of harm. Because Plaintiff has not identified a special relationship between Officer Snyder and Mr. Klesath, or a duty owed by Officer Snyder, any claims of negligence must be dismissed.

## VII.    Sixth Amendment Claims are Not an Issue

To the extent that Plaintiff requests relief under the Sixth Amendment of the United States Constitution, Defendants point out that the deceased Darton Fields II is not subject to a criminal prosecution at this time, and as such any relief under that amendment is inapplicable. As such, Defendants ask the court to dismiss any claim Plaintiff makes under the Sixth Amendment.

### Conclusion

Defendant KDOC does not have capacity to sue or be sued as a legislatively created body, and is further protected from suit by Eleventh Amendment immunity. Defendant Snyder is also protected in his official capacity by Eleventh Amendment immunity. Defendant Snyder is additionally entitled to qualified immunity in his individual capacity, to perform the discretionary functions of his job. Defendant Snyder further owed no duty to control Mr. Klesath so as to make him or KDOC negligently responsible for the death of Mr. Fields.  For the reasons stated above, Defendants request this court dismiss Plaintiff's complaint with prejudice for failing to state a claim upon which relief may be granted.  Defendants further request such other and further relief as may be deemed just and proper.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Bryan Ross
Bryan Ross, KS #21607
Assistant Attorney General
Civil Litigation
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 291-3988
Fax:    (785) 291-3767
Email: bryan.ross@ag.ks.gov
***Attorney for Defendants***
***KDOC and Snyder***

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of October, 2021, the above and foregoing was filed with the clerk of the court by using the CM/ECF system and that a copy of the above was served via first-class mail, postage prepaid to:

Tamara B. Fields
5145 Kalispell
Denver, Colorado 80239

/s/ Bryan Ross
Bryan Ross
Assistant Attorney General
OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT